Robert G. HALL, Appellant,

v.

WELLER, HALL & JEFFERY, INC., et al.,
Appellees.

No. 16123.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 17, 1973.

Rehearing Denied July 19, 1973.

Sheinfeld, Maley & Kay, Joel P. Kay, Houston, for appellant.

J. W. Johnson, Houston, for appellees.

COLEMAN, Justice.

This case involves a controversy between Robert G. Hall, as a stockholder and former employee of an accounting firm organized under the Texas Professional Corporation Act, and Weller, Hall & Jeffery, Inc., and its remaining stockholders, Lester B. Weller, Roger W. Jeffery, Jr., and William L. Green. The dispute concerns the rights and obligations of the shareholders and the corporation under a stock purchase agreement. The trial was to the court without a jury and resulted in a judgment requiring the corporation to purchase the Hall stock.

Prior to October 1, 1971, the corporation was a partnership of certified public accountants. On that date it was incorporated. Appellant was issued 18,910 shares of the common stock of the corporation. Subsequent to the incorporation of the partnership, the corporation and its shareholders entered into a stock purchase agreement. This agreement stipulated the events on the happening of which the stockholder would be required to sell, and the corporation to purchase, his stock; the method for computing the purchase price of the stock; and the manner in which the purchase price would be paid.

Section 5 of the agreement provides:

"5. Purchase by Remaining Shareholders. To the extent that the Corporation is prevented by law from purchasing all or any portion of the stock owned by a shareholder . . . who is required to sell his shares under the terms of this Agreement, the remaining shareholders of the Corporation shall purchase all or such portion of the stock from the selling shareholder . . . and the latter shall sell the same for the price and upon the terms and conditions hereinafter provided."

The trial court found that the corporation has paid in capital in the amount of $50,000.00, capital surplus in the amount of $135,000.00, and earned surplus in the ap-

proximate amount of $7,000.00. The court also found that as determined by the formula prescribed in the Agreement, the price to be paid to appellant was the sum of $246,000.00.

Art. 2.02 of the Business Corporation Act of Texas, V.A.T.S., provides that, subject to the provision of Section B of this Article, a corporation shall have power, when permitted by other provisions of this Act, "to purchase or otherwise acquire its own shares, and to redeem or purchase shares made redeemable by the provisions of its articles of incorporation." Section B provides: "Nothing in this Article grants any authority to officers or directors of a corporation for the exercise of any of the foregoing powers, inconsistent with limitations on any of the same which may be expressly set forth in this Act or in the articles of incorporation or in any other laws of this State. Authority of officers and directors to act beyond the scope of the purpose or purposes of a corporation is not granted by any provision of this Article."

Art. 2.03, Business Corporation Act, provides:

"A. A corporation shall not purchase directly or indirectly any of its own shares unless such purchase is authorized by this Article and not prohibited by its articles of incorporation.

"B. . . .

"C. Upon resolution of its board of directors authorizing the purchase and upon compliance with any other requirements of its articles of incorporation, a corporation may purchase its own shares to the extent of unrestricted earned surplus available therefor . . .

"D. Upon resolution of its board of directors and vote of the holders of at least two-thirds of all shares of each class, voting separately, authorizing the purchase and upon compliance with any other requirements of its articles of incorporation, a corporation may purchase its own shares to the extent of the aggregate of unrestricted capital surplus available therefor and unrestricted reduction surplus available therefor.

"E. . . .

"F. In no case shall a corporation purchase its own shares when there is a reasonable ground for believing that the corporation is insolvent, or will be rendered insolvent by such purchase or when, after such purchase, the fair value of its total assets will be less than the total amount of its debts."

Paragraph (4) of Section B has been cited in support of the authority of the Corporation to purchase the shares in question. This paragraph refers to "redeemable shares." Art. 4.09 provides that shares shall be redeemable only if they have a liquidation preference. The shares involved here are common shares having no liquidiation preference.

In this suit both the plaintiff and the defendants seek specific performance of the stock purchase agreement. Each of them are parties to the agreement and they are all of the signatories. These parties own all of the stock in the corporation. The district court in the exercise of its equitable powers is authorized to require that the necessary action of both board of directors and the stockholders be given to authorize the purchase of appellant's stock pursuant to the stock purchase agreement.

■ The findings of fact made by the trial court show that appellant is entitled to receive $246,000.00 in payment for his stock, and that the total of the Corporation's capital, capital surplus, and earned surplus is the sum of $192,000.00. The purchase agreement requires the corporation to issue in payment for the stock a negotiable promissory note payable over a period of years. The statute forbids a corporation to purchase its own stock except as authorized therein. It authorizes a corporation to purchase only that amount of its stock it may pay for with its earned surplus, unrestricted capital surplus, and unre-

stricted reduction surplus. The judgment requiring the Corporation to issue a negotiable note in the sum of $246,000.00 would require it to commit an act forbidden by Subdivision F of Art. 2.03 of the Business Corporation Act and to purchase its own stock in an amount not authorized by the Act.

██ ██ This course of action was not required by the stock purchase agreement. The parties to a contract are presumed to have in mind the existing laws relating to the contract, or to the subject matter thereof, and such laws enter into and form a part of the contract as if they were expressly referred to or incorporated in its terms. 17 Am.Jur.2d, Contracts, § 257, pp. 654–656. The limitations on the power of the corporation to purchase its own stock were recognized in the stock purchase agreement and provision was made in paragraph 5 of the contract for the contingency that the corporation might be unable to fully comply with its obligation by reason of the limitations on its authority to purchase its own stock found in the Business Corporation Act. The judgment should have required the remaining stockholders to purchase such portion of appellant's stock as the corporation was forbidden to purchase by that Act.

The stock purchase agreement provides that if a stock owner's employment by the corporation is terminated, the notes given for the purchase price of his stock shall be payable in installments over a fifteen year period if the terminated employee does not compete with the Corporation in the practice of accountancy in Harris County during the initial five year period. If he does compete the payments will terminate at the end of such five year period.

Paragraph 3 provides:

"Upon the happening of any of the following events, the affected shareholder, or his estate, shall sell and transfer to the Corporation and the Corporation shall purchase all the shares of stock in the Corporation held by such shareholder at the price fixed in paragraph 6 of this agreement:

"(a) The death of any shareholder;

"(b) The disqualification of a shareholder;

"(c) The physical or mental incapacity of a shareholder;

"(d) The termination of shareholder's employment with the Corporation; or

"(e) The voluntary retirement of a shareholder from accounting practice."

The agreement provides for the purchase of stock in the event a shareholder is unable to practice accounting for the Corporation *or* in the event he voluntarily retires from accounting practice completely. The trial court found on competent evidence that on May 8, 1972, appellant was terminated as an employee of the Corporation by action of the Board of Directors. Thereafter appellant by letter advised the Corporation of his retirement from the accounting practice. He now contends that he is entitled to be compensated for his stock under the provisions of the agreement relating to voluntary retirement.

██ "Upon the happening" of any of the events named in paragraph 3 the obligation to sell and purchase matured. On failure of voluntary compliance with the agreement by either party, a cause of action to enforce the obligation vested in the other party. The price to be paid for the shares, and the terms of payment, must be fixed on the basis of the conditions existing on May 8, 1972.

██ Appellant plead a cause of action for damages based on the breach of an alleged employment agreement, and in the alternative a cause of action for specific performance of the stock purchase agreement. The judgment provides that appellant take nothing on the cause of action for damages. No point of error attacks

this portion of the judgment, which is severable, and it is accordingly affirmed.

■ The Corporation's financial statement and articles of incorporation do not appear in the record. In the absence of this information the amount of stock which the Corporation is authorized to purchase cannot be determined. A decree ordering specific performance must be sufficiently definite and certain as to guide the parties in obeying it, and to afford the basis for enforcement by execution or other lawful process. 52 Tex.Jur.2d, Vol. 52, Specific Performance, § 147. This court, therefore, is unable to render judgment. The case does not appear to be fully developed. Appellant's cause of action for damages is severed. The judgment insofar as it decrees specific performance is reversed and remanded.

Affirmed in part and in part reversed and remanded.