**R. H. SANDERS CORPORATION and Ronald H. Sanders, Individually, Appellants,**

v.

**Stanley HAVES and Samuel Schwinder, Appellees.**

No. 19023.

Court of Civil Appeals of Texas, Dallas.

Sept. 2, 1976.

 

Lawrence Fischman, Weil, Craig, & Fischman, Dallas, for appellants.

Norman P. Hines, Jr., Sol Ballas, Dallas, for appellee.

AKIN, Justice.

This is an appeal by defendants R. H. Sanders Corporation and Ronald H. Sanders from a temporary injunction granted plaintiffs Stanley Haves and Samuel Schwinder. Plaintiffs sued for injunctive and declaratory relief after they were notified of a shareholders' meeting to increase the Board of Directors from three to five, thus giving control to defendant Sanders. The trial court enjoined defendant Sanders from taking any action in contravention of a contract clause that plaintiffs contend constitutes a voting agreement. The principal question presented is whether this language in a contract between the parties for the purchase of a minority stock position and a loan to the corporation by plaintiffs is a valid voting agreement under Tex.Bus. Corp.Act Ann. art. 2.30, subd. B (Vernon Supp.1975). This question is crucial because, defendants contend, unless a valid voting agreement exists, plaintiffs have failed to establish a probable right of recovery; consequently, the issuance of the order would be an abuse of the trial court's discretion. Additionally, defendants argue that plaintiffs had an adequate remedy at law. Because we hold that the voting agreement is valid, the trial court did not abuse its discretion in finding that plaintiffs established a probable right of recovery. Since we also find plaintiffs had no adequate remedy at law, we affirm.

### A. *Probable Right of Recovery*

This controversy emanated from a written contract executed on August 30, 1975, between plaintiffs and Sanders, whereby plaintiffs loaned the defendant corporation $26,000 and purchased thirty-five percent of the outstanding stock of the corporation for $24,000. Sanders needed these funds to enable his solely-owned corporation to finance certain sales contracts in Kuwait.

These contracts were also the inducing factor for plaintiffs' loan to and equity investment in the defendant corporation.

After execution of the August 30, 1975, contract, plaintiffs advanced to the corporation $50,000 for the stock and the loan. In order to protect their investment and loan, the letter agreement contained the following provision:

> Each of the three stockholders shall be a Director of the corporation and each vote shall be equal. A majority of the three-man Board of Directors shall control.

■ Plaintiffs contend that this language constitutes a valid voting agreement, the terms of which are that defendant Sanders will vote his majority shares to elect plaintiffs to the Board and to give plaintiffs a majority on the Board. We agree. Looking at the entire contract, it is evident that this language was intended to protect plaintiffs' investment and loan by giving them a majority control of the Board of Directors. This control is only possible if Sanders is bound to vote his shares for the election of plaintiffs to the Board and is bound not to vote them in a manner that would deprive plaintiffs of a majority. The use of the verb "shall" supports this reading. Since this is not a voting trust under art. 2.30, subd. A, because there is no severance of the voting right from the stock ownership, it can only be construed to be a voting agreement under art. 2.30, subd. B.

■ Our holding here is in accord with sound principles of contract construction that require us to look at the entire contract to ascertain the intention of the parties as to the meaning of a given clause. *LeBlanc, Inc. v. Gulf Bitulithic Co.*, 412 S.W.2d 86, 93 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). Furthermore, all language used is presumed to have some meaning and is not mere surplusage. *Fruhman v. Nawcas Benevolent Auxiliary*, 436 S.W.2d 912, 915 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). Accordingly, we may not disregard language unless it is necessarily repugnant to other language in the contract. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). Our reading of this language is the only reasonable construction that gives it any meaning.

Since we have concluded that this language is a voting agreement, we need next to determine if it is valid under art. 2.30, subd. B. This is so because the question of whether plaintiffs have established a probable right of recovery turns on whether this language constitutes a *valid* voting agreement under art. 2.30, subd. B of the Tex. Bus.Corp.Act Ann. (Vernon Supp.1975). Art. 2.30, subd. B provides:

> Any number of shareholders may enter into a voting agreement *in writing* for the purpose of voting their shares as a unit, in the manner prescribed in the agreement, on any matter submitted to a vote at a meeting of the shareholders *for a period not exceeding ten (10) years* from the date of the execution of the agreement. *A counterpart of the agreement shall be deposited with the corporation* at its principal office and shall be subject to the same right of examination by a shareholder of the corporation . . . as are the books and records of the corporation. *Each certificate* representing shares held by the parties to the agreement *shall contain a statement that the shares represented by the certificate are subject to the provisions of a voting agreement*, a counterpart of which has been deposited with the corporation at its principal office. Upon such deposit of the counterpart of the agreement and endorsement of the prescribed statement upon the certificates representing shares, the agreement *shall be specifically enforceable in accordance with the principles of equity.* [Emphasis added.]

Defendants contend that the letter agreement is unenforceable as a voting agreement because it does not comply with art. 2.30, subd. B, in the following respects: (1) It does not state the duration of the voting agreement; (2) the certificates do not show that they are subject to the voting agreement; and (3) no copy of the agreement was deposited at the corporation's principal

office. We cannot agree for the reasons set forth infra.

### 1. *Duration of Voting Agreement*

 Defendants argue that, absent a specific termination date, the voting agreement must either be perpetual, which would contravene the ten-year limitation of art. 2.30, subd. B, or be terminable at will. We cannot agree because we hold that, where the contract is silent as to duration and where no irreconcilable language exists extending it past the limitation period of the statute, the contract shall be deemed to incorporate the statutory period. *Lloyd v. McDiarmid*, 60 Ohio App. 7, 19 N.E.2d 292, 294 (1937); *see Holmes v. Sharretts*, 228 Md. 358, 180 A.2d 302, 306 (1962). *Contra, Christopher v. Richardson*, 394 Pa. 425, 147 A.2d 375, 376 (1959). The theory is that, where the contract is silent as to time, the parties presumably contracted with the statute in mind. This interpretation conforms to the general rule that existing law is incorporated into a contract where possible to do so without doing violence to the contract terms. *See Hall v. Weller, Hall & Jeffery, Inc.*, 497 S.W.2d 374, 377 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.), *cited with approval in Houston Lighting & Power Co. v. Railroad Commission*, 529 S.W.2d 763, 766 (Tex.1975). To construe this language as terminable at will or as void, as defendants would have us do, is equivalent to saying that it is surplusage because defendant Sanders would not be bound. As this court held in *Fruhman v. Nawcas Benevolent Auxiliary, supra* at 915, contract clauses should not be construed so as to render them superfluous unless absolutely necessary. Consequently, we conclude that defendants' argument is without merit.

### 2. *Non-Compliance with Statute*

Defendants also argue that, since a copy of the voting agreement was not filed with the corporation and since each stock certificate representing shares subject to the agreement does not contain a legend so stating, the voting agreement is void. We cannot agree. Art. 2.30, subd. B, specifically provides that upon filing of the copy and endorsement of the certificates "the agreement shall be specifically enforceable in accordance with the principles of equity." Here, the evidence shows that plaintiff Haves mailed two copies of the agreement to defendant Sanders at the corporate office. Sanders retained one at the corporate office and, after signing the other, returned it to plaintiff Haves. It is also undisputed that defendant Sanders failed to deliver plaintiffs' stock to them until the morning of the hearing on the temporary injunction, despite earlier requests to do so.

 The purpose of these requirements in the statute is to give notice to shareholders or stock purchasers who are not parties to the voting agreement. Since the parties here are all of the shareholders and had knowledge of the agreement, and since no outside buyers were involved, no compelling policy reason exists here for requiring technical compliance with these notice provisions. We conclude, therefore, that defendants' contention is untenable. *See Demarco v. Paramount Ice Corp.*, 102 N.Y.S.2d 692 (Sup.Ct.1950); *see also Sankin v. 5410 Connecticut Avenue Corp.*, 281 F.Supp. 524, 549–53 (D.D.C.1968); *cf. Grogan v. Grogan*, 159 Tex. 392, 322 S.W.2d 514 (1959); *cf. Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 520 (1961). Since we have concluded that a valid voting agreement exists, and since, under art. 2.30, subd. B, an injunction is proper to enforce compliance with the voting agreement, we hold that plaintiffs established a probable right of recovery.

### B. *No Adequate Remedy at Law*

 No adequate remedy at law exists if the damages are incapable of calculation or if defendant is incapable of responding in damages. *County of Harris v. Southern Pacific Transportation Co.*, 457 S.W.2d 336, 339 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); *Grayson Enterprises, Inc. v. Texas Key Broadcasters, Inc.*, 388 S.W.2d 204, 208 (Tex.Civ.App.—Eastland 1965, no writ). Since the trial court found that damages were incapable of determination

and that defendants would be unable to respond in damages, we must sustain the temporary injunction if either of these findings are supported by evidence. *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ.App.—El Paso 1967, writ ref'd n. r. e.).

We first turn to the question of whether there is evidence that damages cannot be ascertained. The investment which the agreement was designed to protect has two aspects: A loan and a purchase of stock. Although damages from the failure to repay the loan may be definite, the effect on the value of plaintiffs' equity stock is not readily ascertainable. *See 721 Corp. v. Morgan Guaranty Trust Co.*, 40 Misc.2d 395, 243 N.Y.S.2d 198, 200 (1963). This is especially true where, as here, there is evidence that the defendant has diverted corporate assets to his personal use. Plaintiff Haves testified that Sanders had repeatedly delayed the repayment of all or part of the loan, employing a succession of excuses. Furthermore, Sanders refused to allow plaintiffs to inspect corporate bank records, and Haves testified that Sanders had removed considerable funds from the corporation, despite the agreement which limited his remuneration to $500 per week. Moreover, it appeared that defendant Sanders falsely entered expenses for furniture and was drawing excessively large sums for travel expenses. Although requested to do so by plaintiffs, Sanders refused to give plaintiffs details on the status of a substantial sale to a Kuwait firm. This evidence supports the trial court's finding that Sanders was stripping the corporation of its assets. Since the value of plaintiffs' stock will be adversely affected by the depletion of the corporate assets and since the potential value of plaintiffs' equity investment cannot be readily ascertained, we hold that plaintiffs have established that no adequate remedy at law is available. Accordingly, the judgment of the trial court is affirmed.