Donald R. GREEN and Texlon Hose &
Coupling, Inc., Appellants,

v.

STRATOFLEX, INC., Appellee.

No. 18248.

Court of Civil Appeals of Texas,
Fort Worth.

March 6, 1980.

Farrar & Claunch, and Jim Claunch and Sidney Farrar, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Munn & Collins, and Estil Vance, Jr., Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

Stratoflex Inc. obtained a temporary injunction against Donald R. Green, a former employee, and Texlon Hose & Coupling, Inc. (a company formed by Green) to prevent them from using a teflon hose manufacturing process. Stratoflex claims that the manufacturing process is a trade secret which it is seeking to protect. It was the attempt by Green and Texlon to use the process which prompted its suit. Green and Texlon have appealed from the order granting the temporary injunction.

We affirm.

Stratoflex is a manufacturer of wire reinforced teflon hose couplings used in the aerospace industry. Stratoflex obtained all of the teflon hose it required from two suppliers until 1976, when one of the suppliers discontinued its teflon hose production. Stratoflex, confronted with the prospect of having only one supplier, attempted to enter into a joint venture with another company which had been unsuccessfully attempting to develop a teflon hose manufacturing process. This did not work out, and Stratoflex proceeded alone.

After much trial and error, and at considerable cost Stratoflex perfected a process which produced a commercially salable product. Stratoflex had to develop the process entirely on its own as all other manufacturers of teflon hose are quite secretive about their manufacturing processes and operations. In addition to Stratoflex, there are only five other companies in the United States which are known to have perfected the process.

Due to this industry wide secrecy, Stratoflex also assumed a posture of secrecy in its developmental work. It went to considerable lengths to protect its operations and information about its manufacturing processes. They were available to only a small number of Stratoflex employees. As part of these precautions, Stratoflex limited access to its teflon hose plant to those employees who were needed to operate the plant and to certain managerial employees who had a need to know about the operations. All Stratoflex employees who were given access to the teflon hose plant were required to sign non-disclosure statements as a condition of employment.

One such employee, who both had access to the plant and who had been required to sign a non-disclosure statement, was Green. He had been an employee of Stratoflex for about fifteen years before Stratoflex attempted to develop its teflon hose manufacturing process. When Stratoflex initiated its entry into the manufacture of teflon hose, Green was made the manager of its teflon hose plant and continued in that capacity until he left in April, 1979.

Stratoflex showed that during the period it was developing its teflon hose manufacturing process. Green planned with his brother and with a business associate of his brother to establish Texlon, and that this culminated in its formation in September, 1978. During the period between September, 1978 and April, 1979, Green supplied Texlon with information about the Stratoflex manufacturing process. After Green resigned from Stratoflex he became the general manager of Texlon. Green was the only person associated with Texlon who had any knowledge of the teflon hose manufacturing process.

Once Texlon had been formed, it proceeded to order exactly the same manufacturing equipment as that used by Stratoflex. The orders were placed on the condition that the

equipment supplier would not disclose to anyone the fact that the order had been made. The orders were for equipment which was identical in almost every detail to the equipment which Stratoflex utilized in its teflon hose manufacturing process. The equipment was also ordered from the same manufacturer that had supplied Stratoflex, even where such equipment could have been ordered from more than one source.

Upon acquiring the identical manufacturing equipment, Texlon then utilized knowledge obtained from Green to set up and adjust the equipment to make it operate properly. Such adjustments are normally non routine, and require either prior experience and unique knowledge of the manufacturing process or extensive trial and error to make the machinery perform correctly. After bringing the teflon hose manufacturing equipment into operation, Texlon then proceed to solicit business from Stratoflex's customers. From these solicitations, Stratoflex learned of Texlon's operations and Green's involvement in it, and it brought suit seeking a temporary injunction, a permanent injunction, damages and attorney's fees. After a hearing, the trial court granted a temporary injunction. The order contained nine "findings and conclusions of law". It is from this order which Green and Texlon appeal.

Green and Texlon attack each of the nine "findings and conclusions of law" with a separate point of error asserting that the trial court abused its discretion in granting the temporary injunction. They contend there was no evidence to support each respective finding and, alternatively, contend that each respective finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. The tenth point of error attacks the entire order as granting Stratoflex the ultimate relief it seeks as an improper use of a temporary injunction.

■ The first seven points of error, including such issues as whether or not there was a trade secret or whether Green violated the provisions of his non-disclosure

agreement, go the merits of the underlying cause. These issues cannot be brought before us on appeal at this time and cannot be reviewed by us. *Brooks v. Expo Chemical Co. Inc.*, 576 S.W.2d 369 (Tex.1979). Hence, these points are overruled.

■ The scope of review on appeal of a temporary injunction is limited. In granting or refusing a temporary injunction, the trial court is vested with broad discretion in determining one issue: Whether the party requesting the temporary relief is entitled to preservation of the status quo of the subject matter pending a trial on the merits. *Brooks v. Expo Chemical Co. Inc., supra; Davis v. Huey*, 571 S.W.2d 859 (Tex. 1978). On appeal, the standard of review is whether the record clearly shows the trial court abused its discretion in making its determination. *Texas Foundries v. International Moulders & F. Wkrs.*, 151 Tex. 239, 248 S.W.2d 460 (1952); *Brooks v. Expo Chemical Co., supra; Davis v. Huey, supra.*

■ In order to obtain a temporary injunction, the party seeking the injunction must show that it has no adequate remedy at law; that it will suffer irreparable harm if the temporary injunction is not granted; that it has a probable right of recovery on the merits of the case; and, that the granting of the temporary injunction is necessary to maintain the status quo. The trial court specifically found that Stratoflex had shown each of these four elements, and the appellants attack these findings in points of error eight and nine. After carefully reviewing the record, we hold that there is evidence to support these findings, and that such evidence is not so against the great weight and preponderance of the evidence so as to be manifestly wrong. Therefore, the trial court did not abuse its discretion in granting the temporary injunction and we overrule points of error eight and nine.

■ In their final point of error, Green and Texlon argue that the temporary injunction granted Stratoflex substantially all the relief which could have been obtained on a final hearing on the merits of this case. They further argue that it was error

to grant the temporary injunction where the object of this suit would be accomplished by the delay incidental to the appeal of the temporary injunction. Both of these complaints amount to an abuse of discretion, according to appellants.

With respect to the first part of this argument, we hold that the temporary order does not grant all of the relief which could be sought. Stratoflex, in its original petition, requested not only a temporary injunction, but a permanent injunction, damages and attorney's fees. In the hearing on the temporary injunction, no evidence was taken relative to a permanent injunction, none was sought, nor was any complaint made relative to the lack of this evidence being taken. Damages can be another element of a case of this sort, which would be obtainable only upon a showing of the existence of certain elements proximately causing such damages. This is a part of the case which would be properly left until a hearing on the merits of this case. This the trial court did. Likewise, the attorney's fees sought by Stratoflex were not addressed by the trial court in the hearing on the temporary injunction. While we do not presume to pass on the merits or propriety of Stratoflex's case in either the area of attorney's fees or damages, we simply note that no action was taken on these items which were sought in the original petition of Stratoflex. The fact that no action was taken in these areas shows that the hearing on the temporary injunction was not a full hearing on the merits and that it did not grant substantially all of the relief to which Stratoflex may have been entitled.

■ Green and Texlon also complain of time delays caused by this appeal, which have the effect, they allege, of granting the full relief which could have been obtained through a hearing on the merits. As authority, they cite *Ledel v. Bill Hames Shows Inc.*, 367 S.W.2d 182 (Tex.Civ.App.—Fort Worth 1963, no writ) and *Reeder v. Intercontinental Plastics Mfg. Co.*, 581 S.W.2d 497 (Tex.Civ.App.—Dallas 1979, no writ). It appears that Green and Texlon feel that the *Reeder* case requires that a preferential trial setting for a full hearing on the merits be given after a temporary injunction is granted. The failure to do this, they argue, requires the reviewing appellate court to alter its standard of review. We are not persuaded that this is the correct interpretation of this case.

*Reeder* appears to say that certain actions on the part of the trial court are desirable, but it does not appear that all of the suggestions made in that case are mandatory. One example is at 581 S.W.2d 497, 499, where the court says "we strongly urge that an early trial setting be made whenever a temporary injunction is granted and that the date set for trial on the merits be recited in the temporary order." This may be highly desirable, but oftentimes it may be impracticable for the trial court to do so. We will not impose such a mandatory burden on the trial courts.

Green and Texlon also cite *Ledel v. Bill Hames Shows, Inc., supra*, as authority. *Ledel* involved a person who was a general manager of a carnival. This person severed his employment relationship with the carnival and went into a competing business on his own. The former employer obtained a temporary injunction prohibiting the former general manager from attempting to compete with the carnival for one year at specified locations. These locations happened to be the same ones where the former employer had one year contracts to run carnivals. In dissolving the temporary injunction, this court held that the temporary injunction granted the same relief which could have been obtained on a full hearing on the merits of the case. The damage which could have occurred would have lasted for one year, and the injunction was also for a one year period. As a result, the temporary injunction went too far and granted the same relief as a full hearing on the merits. We feel that this case is distinguishable.

The instant case involves an interference with a property right, specifically, a manufacturing process. There are no contracts of fixed duration of which we are aware,

and the temporary injunction is also not for a fixed duration. We presume that a hearing on the merits of this case will be held promptly after this appeal is decided. Because of this, it does not appear that the temporary injunction will work as either a permanent injunction or run for the duration of the period of anticipated harm. We note that the trial court gave this case an advanced hearing for the temporary injunction, and that the hearing before this court was based on a request for a preferential setting. We have no reason to believe that this case will not be given such treatment in the future. Accordingly, we find the appellant's argument that the granting of the temporary injunction amounted to a *de facto* determination of the case on the merits to be without basis for complaint. For this reason, and for the other reasons discussed above Green and Texlon's tenth point of error is overruled.

■ Having concluded our discussion of all points of error, there is one additional matter which we feel is deserving of comment. No point of error is raised on this subject, which concerns the extent and potential overbreadth of the temporary injunction. Although we do not normally address matters about which no complaint is raised, there is case authority that a court of civil appeals, in reviewing an injunction, can render the proper order which the trial court should have rendered, if the order is incorrect or otherwise defective. *Walker v. Walter*, 241 S.W. 524 (Tex.Civ.App.—Fort Worth 1922, no writ); *Dilts v. Faulkner*, 289 S.W. 131 (Tex.Civ.App.—Dallas 1926, no writ); 31 Tex.Jur.2d *Injunctions* § 229 (1962).

The temporary injunction issued by the trial court reads, in part, as follows:

"1. Defendant, Donald R. Green is specifically enjoined from installing any processes or equipment which he learned of and which were developed through his employment with plaintiff, Stratoflex, Inc., and from using, working with, or manufacturing teflon hose from any of the processes, information, know-how, systems or procedures which he learned from the manufacture of teflon hose while an employee of Stratoflex, Inc.

"2. Defendants, Donald R. Green, and Texlon Hose and Coupling, Inc. are specifically enjoined from in any manner making, manufacturing, or processing teflon hose through use of the methods, system, or process previously and presently used by the plaintiff, Stratoflex, Inc., and from making, manufacturing, or processing teflon hose by use or means of any of the processes and equipment now installed in the building currently leased by the defendant, Texlon Hose and Coupling, Inc.

"3. Defendants, Donald R. Green and Texlon Hose and Coupling, Inc. are further enjoined from using any of the methods, means or processes or equipment used by Stratoflex, Inc. for the manufacturing of teflon hose, including specifically, but without limitation, plaintiff's continuous sintering process, including the use of derlin pins, and are further enjoined from selling, offering for sale, or distributing any teflon hose manufactured through use of any methods, means or processes utilized by Stratoflex, Inc.

"4. This temporary injunction, and the prohibitions thereof, extend to and apply to any other persons in active concert or participation with the defendants, who receive actual notice of this Order by personal service or otherwise."

After reading the provisions of the temporary injunction cited above, it may appear that the order is overbroad. Normally, in our system of free enterprise, society encourages the use of skills and experience which one gains through their former employment when such skill and experience can be used in a later job or in the furtherance of one's making a living. The temporary injunction in this case may appear to a reader to run against that principle. However, based on the facts of this case, we do not think so, and comment here so that our opinion is not misconstrued. We cite from a letter from the trial judge to the attorneys of record in this case, when the temporary injunction was granted:

"It is true that the defendant Green, as an employee of the plaintiff, is entitled to use his skill and experience gained while in the employment of the plaintiff. However, he is not entitled, upon leaving that employment, to appropriate and later use the confidential information pertaining to the processes and methods of manufacturing the teflon hose. There is a distinction."

We do not wish to have this distinction overlooked by anyone who may seek to utilize this case for a much harsher precedent than that which it already is. The temporary injunction places a harsh burden on Green, but we do not feel that it is any more onerous than permissible or any less harsh than the circumstances dictate.

The temporary injunction of the trial court is affirmed.