**ALAMO SAVINGS ASSOCIATION OF TEXAS, Appellant,**

v.

**FORWARD CONSTRUCTION CORPORATION, Appellee.**

No. 13–87–345–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 25, 1988.

Rehearing Denied March 24, 1988.

Gerald T. Drought, Diana M. Geis, Martin, Shannon & Drought, San Antonio, Raymond A. Cowley, Mark Schwarz, Jarvis, Schwarz & Kittleman, McAllen, Jay Stuart, Nedell, Houston, for appellant.

Will G. Dickey, Houston, James D. Selman, McAllen, for appellee.

Before UTTER, NOAH KENNEDY, and DORSEY, JJ.

## OPINION

UTTER, Justice.

This is an accelerated appeal from the granting of a temporary injunction in which the trial court enjoined Alamo Savings Association of Texas (Alamo) from presenting and drafting upon, and Texas State Bank of McAllen, Texas (Bank) from honoring or paying, a $310,000.00 letter of credit until judgment in this cause is entered by the trial court. We affirm the judgment of the trial court.

This dispute centers around a letter of credit purchased by the Forward Construc-

tion Corporation (Forward) apparently pursuant to a construction contract with Richmond Joint Venture II (Richmond), naming Alamo as the beneficiary.

In December of 1985, Richmond approached Alamo for financing for the construction and development of a retail shopping center in Rosenberg, Texas. Alamo thereafter issued a loan commitment to Richmond in an amount not to exceed $3,120,000.00, but which required Richmond to deposit an unconditional, irrevocable letter of credit in the amount of $310,000.00 as collateral for the loan. The commitment further required that the contractor, not yet selected at that time, provide Richmond with payment and performance bonds covering the general contractor's performance under the Construction Contract.

On January 9, 1986, Forward and Richmond entered into a contract which was amended on March 22, 1986, whereby Forward was hired as the general contractor for the project. On that same day, Forward delivered a letter of credit in the sum of $310,000.00, with an expiration date of July 16, 1987, to the closing of the construction loan agreement between Richmond and Alamo. Both Michael E. Robinson of Richmond and Martha Lewis of Alamo were present at the closing.

In its first point of error, Alamo contends that the trial court erred as a matter of law in granting the temporary injunction because there was no evidence or insufficient evidence of "fraud in the transaction" as required by Tex.Bus. & Com.Code Ann. § 5.114(b) (Vernon Supp.1988).

■ In appeals regarding the granting or denial of a temporary injunction, appellate review does not extend to the merits of the moving party's case. As the court stated in *Philipp Brothers, Inc. v. Oil Country Specialists, Ltd.*, 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd):

Review of such cases is strictly limited to a determination of whether there has

been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978). At a hearing on a temporary application, the only issue before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Diesel Injection Sales & Service, Inc. v. Gonzalez,* 631 S.W.2d 193 (Tex.App.—Corpus Christi 1982, no writ). The appellate court is not to substitute its judgment for that of the trial court, but merely to determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion ... *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649, 651 (Tex.1970).

A cardinal principal of letter of credit law is that the obligation of the issuer bank to pay the beneficiary of a letter of credit upon presentment of conforming documents is independent of the underlying contractual relationship between the customer and the beneficiary. *See Republic National Bank v. Northwest Bank,* 578 S.W.2d 109, 114 (Tex.1978); *Paris Savings and Loan Association v. Walden,* 730 S.W.2d 355, 357 (Tex.App.—Dallas 1987, writ dism'd); *GATX Leasing Corp. v. DBM Drilling Corp.,* 657 S.W.2d 178, 181 (Tex.App.—San Antonio 1983, no writ). However, Tex.Bus. & Comm.Code Ann. § 5.114(b) lists three exceptions to the general rule:

> (b) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7.507) or of a certificated security (Section 8.306) or is forged *or fraudulent or there is fraud in the transaction:*
>
> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
>
> (2) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from

the customer of fraud, forgery or other defect not apparent on the face of the documents but *a court of appropriate jurisdiction may enjoin such honor.* (emphasis added).

Fraud in the transaction has been defined as fraud that destroys the legitimate purposes of the letter of credit's independence from the underlying obligation. *Paris,* 730 S.W.2d at 358; *Phillip Brothers,* 709 S.W.2d at 264-65; *GATX,* 657 S.W.2d at 182-83. Fraud results when a false misrepresentation of a material fact is made with the intent to induce the listener to act upon it and the listener acts in reliance upon the misrepresentation and suffers injury as a consequence. *Gulf Interstate Engineering Co. v. Pecos Pipeline & Producing Co.,* 680 S.W.2d 879, 882 (Tex. App.—Houston [1st Dist.] 1984, writ dism'd); *Hicks v. Wright,* 564 S.W.2d 785, 791 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). In other words, the fraudulent wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation is no longer served. *Paris,* 730 S.W.2d at 359; *see also Sztejn v. J. Henry Schroder Bank Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (1941); *United Bank, Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 392 N.Y.S.2d 265, 268, 360 N.E.2d 943, 946 (1976).

The record reveals that it is undisputed that there is no written contractual agreement between Forward and Alamo, wherein Forward has agreed to put up a letter of credit as additional collateral for the Richmond loan. The record further reflects that no evidence was adduced at the hearing showing that Forward and Richmond had made an agreement for Forward to put up a letter of credit as additional collateral for the Richmond loan. To the contrary, Forward alleges that Richmond fraudulently misrepresented to Forward that Forward's letter of credit was to be put up in lieu of the normal payment and performance bond. Forward further alleges that Alamo, through Lewis, the

loan officer present at the closing, was aware of Richmond's fraudulent misrepresentation regarding Forward's letter of credit. Forward lastly asserts that despite this knowledge, Alamo failed to disclose Richmond's true purpose; i.e., to use Forward's letter of credit to meet a "condition" of its loan agreement with Alamo in which Richmond or an acceptable third party was to put up a $310,000.00 letter of credit as additional collateral for the Richmond's loan. In other words, Forward contends that the letter of credit at issue was the actual vehicle used to perpetrate the fraud, and that all contracts involved in its issuance are no longer independent, but are all involved in the "fraud in the transaction."

Joe Cox, president of Forward, testified at the hearing on the temporary injunction that Michael Robinson, one of the Richmond partners, informed him that the letter of credit was to be put up in lieu of a payment and performance bond. In fact, at the January 9, 1986, closing, Cox reasserted that Forward's letter of credit was representative of a payment and performance bond, of which Robinson confirmed. Alamo was represented by Martha Lewis at the closing, but she apparently remained silent, neither disagreeing with Cox's assertion nor disclosing any other hidden purpose intended for Forward's letter of credit. Cox stated at the hearing that it was not until a September 1986 meeting with James Taggert of Alamo that he became aware that Forward's letter of credit had been used as additional collateral for the Richmond loan. Moreover, no document to which Forward was a party reflects that Forward's letter of credit was to serve as such collateral. To the contrary, the January 21, 1986, minutes of Forward's Board of Director's meeting clearly reveals that it was Forward's intent that the letter of credit be placed in lieu of a payment and performance bond.

James Taggert, vice president and manager of commercial real estate liens for Alamo, testified that Alamo's loan agreement with Richmond required that Richmond, or an acceptable third party, deliver a letter of credit in the amount of $310,000.00. However, nowhere in that document or any other document produced at the hearing was it shown that *Forward* was specifically required to do so. Taggert further testified that he believed Forward's letter of credit was intended to be in lieu of a payment and performance bond, but that his superiors "continued to dilute [sic] themselves with the idea that the $310,000.00 letter of credit, in their opinion, was additional collateral for the loan." Taggert stated that, in his opinion, the performance bond requirement was never waived and that the "only people that could waive that requirement would have been the board of directors." Moreover, he testified that he had requested each loan officer, including Lewis, to produce an "exception report" showing what documents Alamo did not have in their files, but were supposed to. At that time, Lewis failed to disclose to him that Alamo did not have a payment and performance bond for Forward.

Mike Robinson, a partner in the Richmond project, testified that the letter of credit was required by Alamo as additional collateral for the Richmond loan. However, in response to cross-examination, Robinson admitted that he had not told Cox that Forward's letter of credit was to be collateral for the Richmond loan.

Although disputed, Forward has presented sufficient evidence of "fraud in the transaction" as required by Tex.Bus. and Comm.Code Ann. § 5.114(b) (Vernon Supp. 1988), for the court to enjoin the drafting and payment of Forward's letter of credit. We overrule appellant's first point of error.

Alamo's second through fifth points of error contend that the trial court erred in granting the temporary injunction because there was no evidence or insufficient evidence to show Forward has no adequate remedy at law; that Forward will suffer irreparable harm if the temporary injunction is not granted; that Forward has a probable right of recovery on the merits of

the case; and that the granting of the temporary injunction is necessary to maintain the status quo. *Millwrights Local Union No. 2484 v. Rust Engineering Co.,* 433 S.W.2d 683, 685–86 (Tex.1968); *Green v. Stratoflex, Inc.,* 596 S.W.2d 305, 307 (Tex.Civ.App.—Fort Worth 1980, no writ).

■ A careful review of the transcript reveals that there is sufficient evidence to support the trial court's findings on the above issues. First, no adequate remedy at law exists if the damages are either incapable of calculation or if the defendant is incapable of responding in damages. *R.H. Sanders Corp. v. Haves,* 541 S.W.2d 262, 265 (Tex.Civ.App.—Dallas 1976, no writ); *Southwestern Chemical & Gas Corp. v. Southwestern Pipe Line Co.,* 369 S.W.2d 489, 493 (Tex.Civ.App.—Houston 1963, no writ). It is not enough that some legal remedy may exist; rather, the remedy at law must be as practical, available and effectual as the remedy at equity. *Greater Houston Bank v. Conte,* 641 S.W.2d 407, 410 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Baucum v. Texam Oil Corp.,* 423 S.W.2d 434, 440–41 (Tex.Civ. App.—El Paso 1967, writ ref'd n.r.e.).

The evidence presented indicates that Alamo has a negative net worth of at least $100,000,000.00, and that they are currently, pursuant to a voluntary consent agreement, under the supervision of the State Commission of Savings & Loans. There was also testimony adduced stating that Alamo may be or already is insolvent and that its financial picture is "bleak." The trial court expressly found, and we hold that there was sufficient evidence to show that Alamo may be unable to respond in damages by the time a conclusion of the trial on the merits results.

The trial court further found that if Alamo should be allowed to be paid on the letter of credit, it would substantially affect Forward's net worth and solvency. We agree. The evidence submitted reflects that the payment of Forward's letter of credit would materially affect the assets of the corporation, and possibly force them to

go out of business. This testimony was uncontroverted by Alamo. We hold, therefore, that there was sufficient evidence presented that Forward would suffer irreparable harm absent the granting of the temporary injunction. *Phillip Brothers,* 709 S.W.2d at 266.

The trial court also found that Forward had demonstrated a probable right to recovery in the cause and that the issuance of a temporary injunction was necessary to maintain the status quo. We have already held that Forward has evidenced sufficient "fraud in the transaction" such that the trial court may enjoin the honoring of Forward's letter of credit. Without belaboring the issue any further, we now hold that there was sufficient evidence presented to show, at the very least, Forward's probable right of recovery at trial.

Writs of injunction may also be issued where "a party performs or is about to perform ... an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual." Tex.Civ.Prac. & Rem. Code Ann. § 65.011 (Vernon 1986). The record, in addition to the evidence presented above, indicates that the letter of credit was to expire on July 16, 1987. There is evidence showing that Alamo has already attempted to draft upon the letter of credit and receive payment on it from Texas State Bank. Thus, Forward has sufficiently demonstrated that a temporary injunction will be necessary to maintain the status quo.

Lastly, we agree with Forward that the "temporary enjoinment" does not grant Forward all the relief to which it may be entitled, because the court has not "permanently enjoined" Alamo from drafting upon the letter of credit. The temporary injunction merely extended the letter of credit's expiration date to July 16, 1988. We overrule Alamo's second through fifth points of error.

We hold, therefore, that the trial court did not abuse its discretion in seeking to

preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits. *Philip Brothers,* 709 S.W.2d at 266; *Greater Houston Bank,* 641 S.W.2d at 410.

The order of the trial court granting a temporary injunction is AFFIRMED.