**Don A. SANDERS, Plaintiff–Appellant,**

v.

**John J. McMULLEN,
Defendant–Appellee.**

No. 88–2688.

United States Court of Appeals,
Fifth Circuit.

April 5, 1989.

John L. McConn, Jr., Cecilia H. Ducloux, McConn & Hardy, Walter P. Zivley, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., for plaintiff-appellant.

John H. Buck, James P. Keenan, Bracewell & Patterson, Houston, Tex., for defendant-appellee.

Before GEE, HIGGINBOTHAM and DUHE, Circuit Judges.

GEE, Circuit Judge:

### Facts

The Houston Sports Association (HSA) is a Texas corporation that owns and operates the Astrodome and the Houston Astros Baseball Club. In 1979, the defendant-appellee, John J. McMullen, formed the Houston Astros Limited Partnership (HALP) to purchase the capital stock of HSA from its creditors. McMullen was a general partner of HALP and personally owned 25% of the partnership. His family owned an additional 8%. The plaintiff, Don A. Sanders, as one of 25 other investors, owned a 2% interest in HALP.

After the 1980 baseball season, investors sought to oust McMullen as a general partner of HALP, and the organization was dissolved. HSA, however, was recapitalized and the partners of HALP received HSA stock. The result was that McMullen controlled 34% of the stock and became Chairman of the Board. Sanders still owned 2%.

In 1984, minority shareholders tried to enter a voting agreement with 51% of the stockholders to remove McMullen from management of HSA. Sanders' 2% interest was included in the 51%, but he decided to withdraw from the agreement, leaving the shareholders with only 49%. Sanders claims he agreed to withdraw because of promises made by McMullen. McMullen was able to retain control of HSA, and even purchased more shares when the organization was restructured. McMullen then controlled 63% of the shares and Sanders increased his share to 13% with a $4 million stock purchase.

Sanders contends that McMullen promised him the following items in exchange for withdrawing from the voting trust:

1) Participation in all management decisions involving the baseball team;

2) access to all operational information;

3) the baseball manager and staff would be advised of Sanders' status;

4) participation in league meetings, World Series and All Star Game activities;

5) access to all baseball facilities;

6) inclusion of his shares in the control block for any sale;

7) McMullen would vote his shares to keep Sanders on the Board of Directors.

Sanders contends that he purchased the additional stock and withdrew from the voting trust that would have ousted McMullen in reliance on these promises. A continuing shareholder's agreement and a collateral agreement were both signed by the parties. The agreements represented Sanders' additional investment of $4 million. The promises are not contained in the documents or mentioned on the stock certificates.

In November 1986, Sanders was not re-elected to the Board of Directors of HSA and McMullen sent him a letter stating that he was not entitled to any special privileges as a shareholder. Sanders sued McMullen for breaching the agreement and for fraudulent misrepresentation. He sought specific performance or an injunction requiring McMullen to honor his agreement. The trial court stated that Sanders wanted McMullen to purchase his shares for a 100% profit, but this remark is disputed by Sanders' attorneys, who say he seeks only fair market value. An expert witness testified that the value of Sanders' stock is considerably lower if it is not part of the control block.

The trial court granted McMullen's motion for summary judgment, finding that there was no genuine issue of material fact.

### Analysis

Summary judgment is appropriate when there is no genuine issue of material fact for the jury to decide. Fed.R.Civ.P. 56. In this case, the trial court examined the evidence and determined that any agreement between McMullen and Sanders was a "voting agreement" that fell under the Texas Business Corporation Act, article 2.30(B). That statute provides:

> Any number of shareholders may enter into a voting agreement in writing for the purpose of voting their shares as a unit, in the manner prescribed in the agreement, on any matter submitted to a vote at a meeting of the shareholders. A counterpart of the agreement shall be deposited with the corporation at its principal office and shall be subject to the same right of examination by a shareholder of the corporation, in person or by agent or attorney, as are the books and records of the corporation. Each certificate representing shares held by the parties to the agreement shall contain a statement that the shares represented by the certificate are subject to the provision of a voting agreement, a counterpart of which has been deposited with the corporation at its principal office. Upon deposit of the counterpart of the

agreement and endorsement of the prescribed statement upon the certificates representing shares, the agreement shall be specifically enforceable in accordance with the principles of equity.

This statute thus requires, in rather verbose fashion, three things:

1) a writing;
2) a deposit of a counterpart at the corporation's main office;
3) reference to the agreement on the certificates.

■ The trial court determined that the oral agreement between McMullen and Sanders was a "voting agreement" subject to the requirements of article 2.30(B). Since the promises were not in writing, the court granted summary judgment on the issue. The trial court treated all of the issues as constituting a voting agreement, although not all of them related to voting. In fact, of the seven alleged promises, only the one that required McMullen to vote his shares so as to keep Sanders on the Board is without question controlled by article 2.30(B). The trial court's summary judgment on alleged promises not relating to the voting of shares is therefore reversed and remanded.

With regard to the alleged agreement that McMullen vote so as to keep Sanders on the Board, the appellant argues that the doctrine of part performance removes it from the statute of frauds. The part performance by Sanders would be his purchase of the shares. The appellant contends McMullen's alleged agreement would then be enforceable without meeting the writing requirement of article 2.30(B).

■ The appellant's argument is not persuasive. Part performance must be specifically referable to an agreement. As Cardozo wrote,

> There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.

*Burns v. McCormick*, 233 N.Y. 230, 135 N.E. 273, 273 (1922). In *Burns*, Cardozo was dealing with the doctrine of part performance in its more customary setting, an oral agreement to convey land. In many instances payment of money and possession of property can only be explained by an agreement to purchase the real property. Payment and possession are unintelligible except as an incident to purchase. But in the instant case, there are any number of possible explanations for the purchase of the stock by Sanders. While the appellant's explanation is plausible, it is also plausible that he purchased the stock because he thought it was a good investment or because he had a special interest in baseball. Sanders' purchase of stock does not inexorably lead to the conclusion that there was an agreement between the appellant and appellee. Since the act is not "unequivocally referable" part performance will not rescue the appellant from the strictures of the Texas statute on voting agreements.

The appellant also argues that Texas courts do not require literal adherence to the voting agreement statute, and cites *R.H. Sanders Corp. v. Haves*, 541 S.W.2d 262 (Tex.Civ.App.1976) in support of that argument. The argument, however, is overbroad. The *Sanders* court validated a voting agreement that failed to comply with all of the technical requirements of the statute, but only because the purpose of the statute was not frustrated. Although no copy was filed with the corporation, and the stock certificates failed to refer to the agreement, all shareholders had knowledge of the agreement. The notice requirement of the statute was therefore satisfied. *Id.* at 265.

The *Sanders* court wisely looked to the purpose of the statute, one to give notice to shareholders and potential buyers of the stock. *Id.* The court continued to state that, "Since the parties here are all of the shareholders and had knowledge of the agreement, and since no outside buyers were involved, no compelling policy reason exists here for requiring technical compliance with these notice provisions." *Id.*

■ The *Sanders* rule cannot apply to this case. While Texas courts may not require literal conformity with the statute, they do at least require that the purpose of the statute not be undermined. In this case, other shareholders existed who were totally unaware of the agreement. The notice element of the statute is therefore unsatisfied. The alleged promise to vote so as to keep the plaintiff on the board was clearly a voting agreement not in compliance with statutory requirements. The trial court properly awarded summary judgment on that issue and we affirm.

■ The other cause of action, fraudulent misrepresentation, sounds in tort. The order of the trial court fails completely to address the fraud complaint. The elements for a prima facie case of fraudulent misrepresentation are:

1) a material misrepresentation;

2) the representation was false;

3) the speaker knew it was false when made;

4) the speaker intended reliance;

5) the other party did rely on it; and

6) the party in reliance was injured.

*Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 235 (Tex.Civ.App.1975).

From the materials presented by the appellant, there was evidence for each of these elements. Whether the plaintiff will prevail at trial is a matter of contention, but at least for the purpose of summary judgment, the court must consider the evidence in the light most favorable to the non-movant. *See, e.g., Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985).

Perhaps the trial court considered the tort claim moot since the contract claim failed. This, however, would not eliminate the tort claim. As the *Susanoil* court noted:

The gist of the fraud in cases involving promises made with no intention to perform is not breach of the promise, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in

fact non-existent, and the deception of the promisee by such false promise. *Susanoil, supra* at 236.

Applying the instant facts to the elements of the cause of action, it is first clear that the representation that Sanders' stock would be included in the control group is material. An expert witness testified that the stock would be worth significantly less if it were not in the control block. McMullen admitted in a deposition that he did not intend to include Sanders' stock in the control group. It is inferentially possible that McMullen would make the promises to induce Sanders to buy the stock and refute the voting agreement which was threatening to oust him. The evidence is also clear that Sanders relied on the representation and has suffered loss from not being included in the control group.

The measure of damages would be the benefit of the bargain, which is the appropriate measure when the plaintiff is still in possession of the property. *See, e.g., Sherrod v. Bailey,* 580 S.W.2d 24, 28–29 (Tex. Civ.App.—Houston [1st Dist.] 1979, *writ ref'd n.r.e.); Wright v. Carpenter,* 579 S.W.2d 575, 578 (Tex.Civ.App.—Corpus Christi 1979, *writ ref'd n.r.e.); El Paso Development Co. v. Ravel,* 339 S.W.2d 360, 365 (Tex.Civ.App.—El Paso 1960, *writ ref'd n.r.e.)* (cited with approval in *Stanfield v. O'Boyle,* 462 S.W.2d 270 (Tex.1971)).

Alternatively, both in its original complaint and on appeal, the appellant sought specific enforcement of the agreement or an injunction. The trial court will be able to consider these remedies on remand. The plaintiff has stated a cause of action on the tort claim, and granting the motion for summary judgment was error.

### Conclusion

Summary judgment for the appellee on the alleged promise of McMullen to vote so as to keep Sanders on the Board is AFFIRMED. The agreement was properly characterized as a voting agreement subject to the strictures of the Texas Business Corporation Act, article 2.30(B). The appellee, however, has presented a prima facie case for fraudulent misrepresentation. All alleged promises not relating to the voting of shares must therefore be heard at trial. The trial court's grant of summary judgment on these issues is therefore

REVERSED and the cause is REMANDED.